1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   WAYNE L. LAWSON,                          ) Case No. 2:12-cv-00559-JAD-CWH
                                             )
8                          Plaintiff,        )
                                             ) **FINDINGS AND RECOMMENDATION**
9   vs.                                      )
                                             ) (Motion for Reversal #9)
10  MICHAEL J. ASTRUE,                        ) (Cross-Motion to Affirm #10)
    COMMISSIONER OF SOCIAL SECURITY,          )
11                                           )
                                             )
12                          Defendant.       )
                                             )

13       This case involves judicial review of administrative action by the Commissioner of Social
14  Security ("Commissioner") denying Plaintiff Wayne L. Lawson's application for disability insurance
15  benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. 42
16  U.S.C. Ch. 7. Before the Court is Plaintiff's Motion for Reversal (#9)[1], filed on November 1, 2012, and
17  the Commissioner's Opposition and Cross-Motion to Affirm (#10), filed on November 26, 2012. The
18  Court also considered Plaintiff's Reply (#12), filed on December 17, 2012. This action was referred to
19  the undersigned Magistrate Judge for a report of findings and recommendations pursuant to 28 U.S.C.
20  § 636(b)(1)(B)-(C)) and Local Rule IB 1-4.

21                              **BACKGROUND**
22      **I.    Procedural History**
23       On May 16, 2008, Plaintiff filed applications for a period of disability and disability insurance
24  benefits and supplemental security income alleging he became disabled on June 22, 2004, which was
25  later amended to May 16, 2007. (A.R.140-148).[2] His claims were denied initially on March 18, 2009
26  and upon reconsideration on May 15, 2009. (A.R. 52-63 and 66-71). On July 26, 2010, Plaintiff and

27
28
─────────────────────
[1] Refers to the Court's docket number.

[2] A.R. refers to the Administrative Record in this matter. *See* Notice of Manual Filing (#12).

his representative appeared for a hearing before Administrative Law Judge ("ALJ") John Heyer. (A.R. 22-41).  On August 17, 2010, the ALJ issued an unfavorable decision finding the Plaintiff has not been under a disability, as defined in the Social Security Act, from May 16, 2007 through the date of his decision.  (A.R. 7-24).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 3, 2012.  (A.R. 1-6).  On April 4, 2012, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl. (#1).

## II.     The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision on August 17, 2010.  (A.R. 10-21).  At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2008[3] and has not engaged in substantial gainful activity since May 16, 2007, the alleged onset date.  (A.R. 12, Findings 1-2).  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine status post surgery, obesity, and diabetes mellitus.  (A.R. 13, Finding 3).[4]  Additionally, the ALJ found Plaintiff has non-severe mental impairments of depression and anxiety based on mild limitation in activities of daily living, mild limitation in social functioning, mild limitation in concentration, persistence, and pace, and no episodes of decompensation.  (A.R. 13).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and more specifically, Listing 1.04.  (A.R. 13, Finding 4).

The ALJ found Plaintiff capable of performing a residual functional capacity for the full range

---

[3] The ALJ decision inconsistently lists the date last insured as March 31, 2008 (A.R. 10) and June 30, 2008 (A.R. 12), but with either date, Plaintiff was insured as of the alleged onset date of May 16, 2007.

[4] Plaintiff incorrectly stated that the ALJ classified Plaintiff's diabetes mellitus as a non-severe impairment and accorded it no weight.  This is inconsistent with the ALJ's step two finding that classifies Plaintiff's diabetes mellitus as severe, (A.R. 13), and the ALJ's express consideration of the medical records related to this impairment in assessing Plaintiff's residual functional capacity (A.R. 16).

1   of sedentary work.  (A.R. 13, Finding 5).  At step four, the ALJ found Plaintiff capable of performing

2   his past relevant work as a cashier based on the vocational expert testimony.  (A.R. 17, Finding 6).

3   The ALJ also made an alternative step five finding in which he found that jobs exist in significant

4   numbers in the national economy that Plaintiff can perform based on his age, education, work

5   experience, and residual functional capacity.  (A.R. 18).  In doing so, the ALJ defined Plaintiff as a

6   younger individual age 18-44 on the alleged onset date, with at least a high school education, able to

7   communicate in English, and found transferable skills not material to the determination of disability.

8   (A.R. 18).  The ALJ considered Medical-Vocational Rule 201.28, which directs a finding of not

9   disabled.  (A.R. 18).  Based on all of these findings, the ALJ found Plaintiff not disabled and denied

10   his applications for a period of disability and disability insurance benefits and supplemental security

11   income.

## DISCUSSION

### I.   Judicial Standard of Review

14   The court reviews administrative decisions in social security disability benefits cases under 42

15   U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states,

16   "Any individual, after any final decision of the Commissioner of Social Security made after a hearing

17   to which he was a party, irrespective of the amount in controversy, may obtain a review of such

18   decision by a civil action . . . brought in the district court of the United States for the judicial district

19   in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the

20   record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

21   Security, with or without remanding the cause for a rehearing."  *Id.*  The Ninth Circuit reviews a

22   decision of a District Court affirming, modifying or reversing a decision of the Commissioner *de*

23   *novo.  Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

24   The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

25   U.S.C. § 405(g); see also *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

26   Commissioner's findings may be set aside if they are based on legal error or not supported by

27   substantial evidence.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see*

28   *also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial

1  evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as

2  a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d

3  1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In

4  determining whether the Commissioner's findings are supported by substantial evidence, the court

5  "must review the administrative record as a whole, weighing both the evidence that supports and the

6  evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720

7  (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

8         Under the substantial evidence test, the Commissioner's findings must be upheld if supported

9  by inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193.  When the evidence will

10  support more than one rational interpretation, the court must defer to the Commissioner's

11  interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of*

12  *Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the

13  court is not whether the Commissioner could reasonably have reached a different conclusion, but

14  whether the final decision is supported by substantial evidence.

15         It is incumbent on the ALJ to make specific findings so that the court does not speculate as to

16  the basis of the findings when determining if the Commissioner's decision is supported by substantial

17  evidence.  Mere cursory findings of fact without explicit statements as to what portions of the

18  evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th

19  Cir. 1981).  The ALJ's findings "should be as comprehensive and analytical as feasible, and where

20  appropriate, should include a statement of subordinate factual foundations on which the ultimate

21  factual conclusions are based." *Id.*

22      **II.**    **Disability Evaluation Process**

23         The individual seeking disability benefits has the initial burden of proving disability.  *Roberts*

24  *v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden,

25  the individual must demonstrate the "inability to engage in any substantial gainful activity by reason

26  of any medically determinable physical or mental impairment which can be expected . . . to last for a

27  continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  More specifically, the

28  individual must provide "specific medical evidence" in support of his claim for disability.  20 C.F.R.

4

1   § 404.1514.  If the individual establishes an inability to perform his prior work, then the burden shifts
2   to the Commissioner to show that the individual can perform other substantial gainful work that
3   exists in the national economy.  *Batson*, 157 F.3d at 721.

4          The ALJ follows a five-step sequential evaluation process in determining whether an
5   individual is disabled.  *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Bowen v. Yuckert*, 482 U.S.
6   137, 140 (1987).  If at any step the ALJ determines that he can make a finding of disability or
7   nondisability, a determination will be made and no further evaluation is required.  *See* 20 C.F.R. §§
8   404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The first
9   step requires the ALJ to determine whether the individual is currently engaging in substantial gainful
10  activity ("SGA").  20 C.F.R. §§ 404.1520(b) and 416.920(b).  SGA is defined as work activity that is
11  both substantial and gainful; it involves doing significant physical or mental activities usually for pay
12  or profit.  20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b).  If the individual is currently engaging in
13  SGA, then a finding of not disabled is made.  If the individual is not engaging in SGA, then the
14  analysis proceeds to the second step.

15         The second step addresses whether the individual has a medically determinable impairment
16  that is severe or a combination of impairments that significantly limits him from performing basic
17  work activities.  20 C.F.R. §§ 404.1520(c)) and 416.920(c)).  An impairment or combination of
18  impairments is not severe when medical and other evidence establish only a slight abnormality or a
19  combination of slight abnormalities that would have no more than a minimal effect on the
20  individual's ability to work.  20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs")
21  85-28, 96-3p, and 96-4p.[5]  If the individual does not have a severe medically determinable
22  impairment or combination of impairments, then a finding of not disabled is made.  If the individual
23  has a severe medically determinable impairment or combination of impairments, then the analysis
24  proceeds to the third step.

25         The third step requires the ALJ to determine whether the individual's impairments or

26  _____

27         [5] SSRs constitute SSA's official interpretations of the statute it administers and its regulations.
28  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. §
    402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Social Security
    Act and regulations.  *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made.  20 C.F.R. §§ 404.1520(h) and 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence such as, all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f) and 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965.  If the individual has the RFC to perform his past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any

1  other work considering his residual functional capacity, age, education, and work experience.  20

2  C.F.R. §§ 404.1520(g) and 416.920(g).  If he is able to do other work, then a finding of not disabled

3  is made.  Although the individual generally continues to have the burden of proving disability at this

4  step, a limited burden of going forward with the evidence shifts to the Commissioner.  The

5  Commissioner is responsible for providing evidence that demonstrates that other work exists in

6  significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

7  ### III.    Analysis and Findings

8      Plaintiff seeks reversal of the ALJ's decision for several reasons.[6]  First, Plaintiff argues that

9  the ALJ did not properly evaluate the entire record because his lumbar post laminectomy syndrome

10  was not listed in the step two finding and not considered in determining his RFC.  Second, Plaintiff

11  contends that the ALJ's credibility finding is not supported by substantial evidence because it does

12  not properly consider his pain, physical complaints, and mischaracterizes the record.  Also, Plaintiff

13  alleges that the step four finding is not supported by substantial evidence.

14  ### A.    Step Two and RFC Findings

15      Plaintiff contends that the ALJ failed to consider his lumbar post laminectomy syndrome of

16  failed back syndrome as an impairment at step two.  Consequently, Plaintiff alleges that the RFC

17  finding fails to consider the effect this impairment has on his ability to perform work.  Plaintiff

18  asserts that this is a reversible error because, like in *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1996), this

19  impairment has physical and mental symptoms, which support his testimony that he is more limited in

20  his ability to perform work than accommodated by the assigned RFC.

21      In response, the Commissioner argues that the ALJ properly considered all of Plaintiff's

22  medically determinable impairments at step two.  Further, the Commissioner contends that the ALJ

23  gave sufficient consideration to the combined effect of Plaintiff's physical and mental impairments in

24

25     [6] The Court notes that Plaintiff's "Statement of the Issues" lists five issues.  Pla.'s Mot. #9, 13-
14.  In addition to the issues cited above, Plaintiff lists an additional issue of whether Plaintiff's treating

26  physician was afforded appropriate weight.  *Id.*  However, after careful consideration of Plaintiff's

27  arguments, he provided no evidence that there was a treating physician opinion, much less that the ALJ
failed to afford one proper weight.  To the extent that Plaintiff characterized Dr. Klimow and Dr. Jones

28  as treating physicians, that is an error because they are examining physicians.  Therefore, this issue will
not be addressed further.

1   assessing him with a sedentary RFC. Additionally, the Commissioner cites support for the RFC in

2   the opinions of consultative examiner Susan Klimow, M.D., and state agency consultant Jaime

3   Wheeler, M.D. (A.R. 469-471 and 485-492).

4         The ALJ is required to consider all of an individual's medically determinable impairments at

5   step two. The ALJ found severe impairments of degenerative disc disease of the lumbar spine status

6   post surgery, obesity, and diabetes mellitus, and non-severe mental impairments of depression and

7   anxiety. (A.R. 13). He is not required to use specific words to classify Plaintiff's impairments as

8   long as his step two finding addresses all of the medically determinable impairments found in the

9   record. Therefore, Plaintiff's argument that the ALJ should have found lumbar post laminectomy

10   syndrome as a severe impairment at step two is not convincing to the extent that it rests on an

11   objection to the ALJ's choice of words for the step two finding.

12         However, Plaintiff appears to also argue that the ALJ's exclusion of lumbar post laminectomy

13   syndrome at step two is an issue because it is an additional impairment, separate from degenerative

14   disc disease of the lumbar spine status post surgery, that has a mental component due to chronic pain.

15   Consequently, Plaintiff contends that it supports his allegations of pain and therefore warrants mental

16   limitations to the RFC. First, the Court notes that most of the medical records highlighted by Plaintiff

17   actually describe it as history of lumbar post-laminectomy syndrome based on Plaintiff's self-report

18   or the doctor's knowledge of his history of medical treatment. *See, e.g.*, A.R. 351-352, 358-359, 365,

19   427, 468, 471. As a result, the medical evidence cited by Plaintiff does not reveal medical signs or

20   laboratory findings to substantiate the existence of lumbar post laminectomy syndrome as a medically

21   determinable impairment during the period at issue. SSR 96-4p specifies that "[n]o symptom or

22   combination of symptoms by itself can constitute a medically determinable impairment" because

23   medical signs and laboratory findings must also be provided. Therefore, neither Plaintiff's self report

24   of chronic back pain to treating or evaluating physicians nor the physicians' notation of history of

25   chronic back pain in their assessments is sufficient evidence to find a step two severe impairment.

26         Nevertheless, Plaintiff contends that lumbar post laminectomy syndrome is the type of

27   impairment that has subjective characteristics of pain and is difficult to prove or quantify due to the

28   absence of reliable techniques for measurement. Given that there are notations of lumbar post

laminectomy syndrome in the assessments of several doctors, the Court will alternatively proceed to give Plaintiff the benefit of the doubt that it should have been found to be a severe impairment at step two. However, the Court finds this error "inconsequential to the ultimate nondisability determination" and therefore, harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir.2012). The failure to list an impairment as severe at step two can be deemed harmless where associated limitations are considered at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.2007). Here, the Court finds that the ALJ's RFC finding is supported by substantial evidence and took into account the evidence of chronic back pain. Ninth Circuit case law recognizes the existence of pain-based impairments having "both a physical and psychological component." *Lester*, 81 F.3d at 829–30; *see also Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir.1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and that the Commissioner must consider all available evidence in assessing complaints of pain). As a result, the Court conducted a thorough review of the record to determine whether the ALJ appropriately considered Plaintiff's allegations of back pain in determine both his physical and mental limitations. As part of the RFC assessment, the ALJ provided an extensive discussion of Plaintiff's medical records, including his history of low back pain. *See* A.R. 15-17. Further, unlike in *Lester*, there is no evidence that the ALJ isolated the effects of Plaintiff's back pain in determining his mental limitations in the paragraph B criteria and RFC findings. 81 F.3d 821. The physical RFC limitations are supported by the state agency medical consultant's opinion that considered Plaintiff's chronic low back pain while limiting him to the sedentary level of exertion. (A.R. 492). Additionally, the lack of mental RFC limitations is supported by the psychological consultative examiner's opinion that considered chronic pain while finding Plaintiff's mental abilities sufficient to support employment in a variety of occupational settings. (A.R. 498). Accordingly, the Court finds the ALJ's failure to find lumbar post laminectomy syndrome to be a severe impairment is, at most, a harmless error.

In conclusion, the Court finds that the ALJ properly considered the effect Plaintiff's back pain had on his physical and mental abilities in making the RFC finding, despite not specifically listing chronic pain in the step two finding. A finding that an impairment is severe requires more than a diagnosis and evidence of subjective complaint of pain, even for a difficult to measure impairment like chronic pain. *See Myers v. Colvin*, 2013 WL 3270367 *7 (W.D. Wash. June 26, 2013) finding

harmless error in ALJ determination that claimant's chronic pain syndrome was not an impairment). Moreover, even giving Plaintiff the benefit of the doubt that his back pain should have been found to be a severe impairment at step two, it did not impact the RFC assessment.  Plaintiff failed to demonstrate any additional significant limitations that would result from the lumbar post laminectomy syndrome and that are not already accounted for by the assigned RFC.  Indeed, the ALJ relied on opinions of doctors who considered the physical and mental effects of Plaintiff's back pain so the sedentary RFC is supported by substantial evidence.

## B.    Credibility Finding

Plaintiff further contends that the ALJ did not properly consider the combined effect of his physical and mental impairments in making the credibility finding.  For example, Plaintiff alleges that a psychological consultative examiner's assessment indicates that he would have difficulty following simple instructions on a sustained basis because of the combined effect of back pain and affective symptoms. (A.R. 497).  Additionally, Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting his testimony regarding his activities of daily living.  He highlights the fact that the ALJ relied on Plaintiff's travel to Alaska in finding him not credible, but did not take into account all of the circumstances regarding his travel.  Further, Plaintiff argues that the ALJ incorrectly rejected Plaintiff's statements regarding pain because they were not fully supported by objective medical evidence.  Finally, Plaintiff argues that his work activity qualified as unsuccessful work attempts that support his inability to work on a sustained basis.

In contrast, the Commissioner alleges that the ALJ provided valid bases for finding Plaintiff not fully credible in accordance with SSR 96-7p.  Specifically, the Commissioner highlighted the fact that the ALJ discussed how Plaintiff was able to move to Alaska, sought intermittent care, no treating physician opined that he was disabled, his treatment was inconsistent with his level of complaints, his work record suggests greater physical abilities, and his activities of daily living were inconsistent with his subjective complaints.  Additionally, the Commissioners emphasized how the ALJ specifically discussed Plaintiff's history of back pain and treatment history from 2004 through 2010 including gaps in treatment and relatively conservative treatment methods after surgery.

The ALJ is required to engage in a two-step analysis to evaluate credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably

be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the individual's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

Despite Plaintiff's allegation to the contrary, the ALJ provided clear and convincing reasons for finding him not fully credible. First, the ALJ relied on objective medical evidence that supported the assigned RFC rather than Plaintiff's allegations of pain. The ALJ provided a thorough summary of the medical evidence in which he highlighted specific objective findings that support the assigned RFC. (A.R. 14-17). For example, the ALJ highlighted the fact that Plaintiff received treatment for his back impairment and pain that was intermittent, included a gap of treatment for almost a year, and he continued to work part-time. (A.R. 15). He also noted that there is no evidence of mental health counseling and doctor notes from 2007 through 2010 indicate that Plaintiff's affect was appropriate. (A.R. 16).

Further, the ALJ considered the conflict between the Plaintiff's subjective pain complaints and the objective findings from consultative examiner Susan Klimow, M.D., which resulted in her opining that Plaintiff was best suited for a non-manual labor job position. (A.R. 471). This opinion was affirmed by the opinion of state agency medical consultant Jaime Wheeler, M.D., who assigned a reduced sedentary RFC. (A.R. 485-492). The ALJ gave these opinions significant weight, but found the claimant capable of performing a slightly less restrictive sedentary RFC given the intermittent physical treatment. Additionally, the ALJ considered the opinion of consultative examiner Paul Jones, Ed.D., who indicated that employment in jobs with limited physical demands could be considered. (A.R. 496-498). Plaintiff attempts to cite one finding, suggesting that Plaintiff would have some difficulty in following simple instructions because of the combined effect of back pain and

affective symptoms, to contend that mental RFC limitations were warranted.  (A.R. 497).  However, the ALJ gave a reasonable explanation for affording this opinion limited weight because it was inconsistent with Plaintiff's lack of mental health treatment, presentation at the hearing, and lack of objective evidence.  Moreover, Dr. Jones' opinion as a whole supported the ALJ's conclusion that Plaintiff could perform work by stating, "Underlying cognitive functions appear intact, above normal range, higher than would be predicted from his level of education, and sufficient to support employment in a variety of occupational settings."  Significantly, all of the opinion evidence supports the ALJ's conclusion that Plaintiff can perform work and therefore supports the ALJ's conclusion that Plaintiff's allegation that he is disabled due to pain is not credible.[7]

The ALJ did not rely on objective medical evidence alone, but rather, addressed some of the seven factors identified in 20 C.F.R. §§ 404.1529(c)and 416.929(c).  For example, the ALJ considered the medication used, activities of daily living, and work history in accordance with SSR 96-7p.  Plaintiff takes issue with the ALJ's description of Plaintiff's work attempts, but the Court finds that this was just one of many factors that the ALJ considered in finding Plaintiff not credible.  The ALJ considered the fact that Plaintiff's jobs were only temporary and did not consider them to be the determinative factor in finding Plaintiff not credible.  Also, Plaintiff objects to the ALJ's description of Plaintiff's activities of daily living.  However, the Court finds that the ALJ properly considered Plaintiff's travel to Alaska and other activities of daily living like participating in church activities, helping with household chores, and attending to personal hygiene as one factor in finding Plaintiff not credible.  Plaintiff's argument that the ALJ distorted the record is not well-founded.  As a result, the Court finds that the credibility finding is supported by substantial evidence.

### C.    Step Four Finding

Plaintiff contends that the step four finding is not supported by substantial evidence.  He argues that he is not capable of performing work as a cashier because the specific vocational

---

[7] A state agency medical consultant, M. Dilger, also provided an assessment of Plaintiff's mental limitations finding him mostly not significantly limited.  (A.R. 499-516).  However, there is no indication that M. Dilger is a doctor or other acceptable medical source, and therefore, her findings are not opinion evidence.  See POMS DI 24510.050; see also SSR 06-3p.  While her opinion cannot be the basis for the RFC, the ALJ could consider it as other evidence in making the credibility assessment.

preparation for that job is 5 meaning it takes six months to one year to learn the job.  Plaintiff alleges that he worked as a cashier for two weeks and therefore did not perform it long enough to learn. Additionally, Plaintiff contends that although the vocational expert testified that Plaintiff could perform this job and that conflicts with the Dictionary of Occupational Title's ("DOT") description of it as specific vocational preparation ("SVP") 5, then the ALJ should not have relied on the vocational expert's testimony.

In response, the Commissioner argues that the step four finding is supported by vocational expert testimony and Plaintiff's description of how he actually performed the cashier job. Alternatively, the Commissioner contends that because the ALJ made a step five finding that is not challenged by Plaintiff, then the conclusion of not disabled is supported.

The Court finds that the ALJ erred in finding Plaintiff able to perform work as a cashier as actually and generally performed.  It is unclear from the record when in 2007 Plaintiff worked as a cashier.  If he performed this work after his alleged onset date of May 16, 2007, then, by definition, it cannot be considered as past relevant work.  Also, Plaintiff testified that he performed it for two weeks.  The vocational expert was questioned regarding whether there are different types of cashiers listed in the DOT.  She clarified that the cashier position she cited corresponded with a SVP 5, which requires a longer amount of time to learn than the two weeks Plaintiff performed the job.  As a result, the Court finds that the ALJ erred in finding that the Plaintiff could perform the cashier job cited as generally performed.  Additionally, the vocational expert indicated that Plaintiff's description of how he performed the cashier job may have been different from the cashier position she cited as Plaintiff being able to generally perform.  The ALJ did not ask any further questions to clarify whether a different DOT description of the cashier job was appropriate for how Plaintiff actually performed the work.  Moreover, Plaintiff's description of how he performed the cashier position includes standing for eight hours, which exceeds the assigned sedentary RFC.  Given these defects in the ALJ's findings that the Plaintiff could perform work as a cashier, DOT 211.362-010, both as generally and actually performed, the Court finds that the step four finding is not supported by substantial evidence.

However, the Court finds that the step four defect is a harmless error because the alternative step five finding is supported by substantial evidence.  The ALJ relied on Medical-Vocational Rule 201.28, which directs of finding of not disabled, to conclude that there are other jobs in the national

13

economy that Plaintiff can perform. Pursuant to Rule 201.28, an younger individual age 18-44, limited to the sedentary exertional level, who has a high school education, skilled or semi-skilled past relevant work, and no transferable skills is not disabled. Additionally, the vocational expert's testimony augmented Rule 201.28 because she testified that an individual with the same RFC and vocational characteristics as Plaintiff would be able to perform the full range of sedentary occupations. (A.R. 46). As a result, the Court finds that the ultimate conclusion of not disabled is supported by substantial evidence and the step four defect is a harmless error.

### IV. Conclusion

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion. Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g) and does articulate sufficient rationale to satisfy the requisite legal standards. The Court finds that the step two and four defects are harmless errors, that the RFC and credibility findings are supported by substantial evidence, and the ultimate step five finding that the Plaintiff is not disabled is supported by substantial evidence.

Based on the foregoing and good cause appearing therefore,

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Plaintiff's Motion for Reversal (#9) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#10) be **granted**.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also

14

held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 16th day of October, 2013.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**