# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Wayne N. Lawson,

    Plaintiff

v.

Commissioner of Social Security,

    Defendant

Case No.:2:12-cv-0559-JAD-CWH

**Order**

This Social Security appeal arises from the denial of disability-insurance benefits to plaintiff Wayne Lawson.[1] Lawson moves for reversal of the Commissioner of Social Security's decision, while the Commissioner asks the court to affirm.[2] In his Findings and Recommendation, Magistrate Judge Carl W. Hoffman recommended affirming the denial,[3] and Lawson timely objected.[4] After carefully reviewing the record and law, I affirm Administrative Law Judge (ALJ) John Heyer's decision to deny benefits, and I adopt Judge Hoffman's report consistent with the order below.

**Discussion**

Lawson allegedly became disabled on May 16, 2007, and he applied for disability-insurance

---

[1] Doc. 9 at 3.

[2] Docs. 9–10.

[3] Doc. 15.

[4] Docs. 15–16. I find these motions appropriate for resolution without oral argument. LR 78-2.

1

benefits on May 16, 2008.[5] His claims were denied on initial view in the Spring of 2009 and denied on reconsideration two months later; he appeared for an ALJ hearing that summer.[6] The ALJ found Lawson had no disability under the Social Security Act from May 16, 2007, to the date of the ALJ decision's on August 17, 2010.[7] After the Appeals Council denied review in February 2012, the ALJ's decision became the Commissioner's final decision and this case became ripe for judicial review.[8] Lawson timely filed in the District of Nevada under 42 U.S.C. § 405(g) seeking reversal; the Commissioner countermoved to affirm the Commissioner's decision.[9]

## Legal Standards

A disability-benefits claimant initially bears the burden to prove that he cannot "engage in substantial gainful activity due to a medically determinable physical or mental impairment, which has lasted or can be expected to last for a continuous period of not less than 12 months."[10] Disability is found "only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy."[11] If the Social Security claimant can show that he is unable to resume his prior work, the burden shifts to the government to show that the claimant can perform substantial and gainful employment or, in other words, "a significant number of other jobs" in the national economy.[12]

---

[5] A.R. 140–48.

[6] A.R. 22–41, 56–63, 66–71.

[7] A.R. 7–24.

[8] A.R. 1–6.

[9] Docs. 9–10.

[10] *Id.* (quoting *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990); 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).

[11] *Id.* (quoting *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990)) (internal quotation marks omitted).

[12] *Id.* (citing *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (internal quotation marks omitted). As this order discusses below, various factors are considered at this stage, including

When reviewing a Social Security benefits denial, the district court applies the de novo standard of review.[13] The district court must determine whether the Commissioner's factual findings were supported by substantial evidence and whether the Commissioner's legal findings were erroneous.[14] "Substantial evidence is more than a scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. [I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."[15] District courts review the entire record, weighing evidence that both favors and detracts from the administrative decision.[16] Where the evidence could support either affirmation or reversal, "the court may not substitute its judgment for that of the ALJ."[17]

A magistrate judge may prepare "proposed findings of fact and recommendations for the [matter's] disposition."[18] If any party objects to these findings and recommendations, the district court must review the objections de novo.[19] Where no objections are made, the standard of review is

---

"residual functional capacity and vocational factors such as age, education, and past work experience." *Matney*, 981 F.2d at 1018 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

[13] *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)).

[14] 42 U.S.C. § 405(g) (writing that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993) (citing *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988); *Caenen v. Sec'y of Health & Human Servs.*, 722 F. Supp. 629, 632 (D. Nev. 1989) (citing *Lewin v. Schweiker*, 654 F.2d 631, 633 (9th Cir. 1981); 42 U.S.C. § 405(g)).

[15] *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (internal citation omitted) (internal quotation marks omitted); *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[16] *Penny*, 2 F.3d at 956 (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[17] *Matney*, 981 F.2d at 1018.

[18] 28 U.S.C. 636(b)(1)(B).

[19] 28 U.S.C. 636(b)(1); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1125 (D. Ariz. 2003) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003)).

at the district judge's discretion.[20] After reviewing the record and relevant law, I consider Mr. Lawson's objections on a de novo standard of review and examine the unobjected-to portions of the Magistrate Judge's report and recommendation for abuse of discretion.

### Discussion

Lawson's objection to the Magistrate Judge's report boils down to two arguments. First, Lawson argues that the ALJ and Magistrate Judge failed to appropriately handle evidence of his post-laminectomy syndrome.[21] Post-laminectomy syndrome is also called failed-back-surgery syndrome.[22] It describes pain that persists after a laminectomy, which "is a type of back surgery performed to relieve nerve compression (radiculopathy) or nerve root injury in the spine caused by disc herniation or spinal canal narrowing (spinal stenosis) related to degenerative changes."[23] The causes of this condition include spinal fusion, nerve-root injury, and reherniation.[24] Lawson's second objection centers on whether he was diagnosed with post-laminectomy syndrome and whether the ALJ and Magistrate Judge made appropriate credibility-related decisions.[25]

**A.     First Objection: Evidence of Post-Laminectomy Syndrome**

Lawson's first objection challenges the second step of the mandatory five-step analysis for a Social Security disability-benefits claim, which the ALJ originally applied and the Magistrate Judge

---

[20] *See* 28 U.S.C. § 636(b)(1); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (emphasis in original) (a "district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

[21] Doc. 16 at 2–9.

[22] Medical Disability Guidelines, Post-Laminectomy Syndrome at 1, http://www.lb7.uscourts.gov/documents/11-61231.pdf (last visited May 19, 2015) (explanation of post-laminectomy syndrome preserved on the Seventh Circuit website); A.R. 11–19; Doc. 15 at 2–14.

[23] Medical Disability Guidelines, Post-Laminectomy Syndrome at 1.

[24] *Id.*

[25] Doc. 16 at 9.

4

reexamined.[26] Step two examines severe impairments under 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c). Under both regulations, a claimant must have "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." Age, education, and work experience are not part of this analysis.[27]

### 1. ALJ and Magistrate Judge findings

The ALJ captioned his discussion of step two with this finding: Lawson has the "severe impairments" of "degenerative disc disease of the lumbar spine post surgery, obesity, and diabetes mellitus" under both 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c).[28] He found that these "impairments cause more than minimal functional limitations."[29] Without elaborating on these "severe impairments," the ALJ spent the remainder of his step-two analysis discussing Lawson's

---

[26] *Compare* Doc. 16 at 2–9 *with* A.R. 10–19 *and* Doc. 15 at 7–15.

The Ninth Circuit provides this useful summary of the five-step analysis that ALJs must apply:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

[27] 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

[28] A.R. 13.

[29] *Id.*

5

depression and anxiety.[30]  In contrast to his physical-impairment findings, the ALJ concluded that Lawson's mental impairments "do not cause more than minimum limitation in [Lawson's] ability to perform basic mental work activities and are therefore nonsevere."[31]

In assessing Lawson's challenge to the ALJ's decision, the Magistrate Judge noted that "most" of Lawson's citations to post-laminectomy syndrome were "based on Plaintiff's self-report or the doctor's knowledge of his history of medical treatment," meaning that Lawson's medical evidence "does not reveal medical signs or laboratory findings to substantiate the existence of lumbar post laminectomy syndrome as a medically determinable impairment during the period at issue."[32] While the Magistrate Judge gave Lawson the benefit of the doubt and accepted that Lawson's post-laminectomy syndrome should have been identified as a severe impairment at step two, the Magistrate Judge still concluded this was not a basis to reverse the ALJ.[33]  He found that failure to include a severe impairment at step two is inconsequential when the ALJ finds at step four—which examines ability to perform past work—that the claimant's physical limitations do not prevent him from resuming past work.[34]  After reviewing the ALJ's step-four discussion, the Magistrate Judge found it was, "at most, harmless error" when the ALJ failed to find post-laminectomy syndrome at step two of his analysis.[35]

### 2. Post-laminectomy-syndrome evidence

To begin with, I find that the ALJ's step-two finding of "degenerative disc disease of the

---

[30] *Id.*

[31] *Id.*

[32] Doc. 15 at 8 (citing A.R. 351–52, 358–59, 365, 427, 468, 471).

[33] *Id.* at 9.

[34] *Id.* at 8–9 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

[35] *See id.* at 9.

6

lumbar spine post surgery" is effectively the same as a finding of post-laminectomy syndrome.[36] Under either phrasing, this condition contemplates spinal degeneration following spinal surgery, considered at step two of the ALJ's decision to deny Social Security benefits. I thus reject Lawson's argument that the ALJ committed reversible error for failing to consider post-laminectomy syndrome at step two, and I overrule Lawson's objection that the Magistrate Judge should have recommended reversal on this basis.[37]

After a careful review, I find that the record supports the conclusion that Lawson was medically assessed as having failed-back syndrome. Dr. Kedar Deshpande's January 2008 report provides this "[a]ssessment" of Lawson: "41 year old male with Hx of lumbar post-laminectomy syndrome, lumbar spondylosis, and lumbar muscle spasm, Lumbar spondylosis, andPost [sic] lumbar fusion L3-4 thru L5-S1—good temporary improvement with facet joint injections."[38] A substantially identical assessment appears in notes prepared by the Orthopedic & Spine Center in April 2008.[39] Dr. Susan Klimow's December 2008 evaluation of Lawson includes—as her own assessment, rather than a report of Lawson's opinion—impressions of "1. Lumosacral back pain[,] 2. Lumbosacral back postlaminectomy syndrome . . . 6. Status post L3-L4 and L4-L5 fusion with decompression, 2004," and more.[40] These medical records describe a patient with a problem: post-laminectomy syndrome.

Even though I find that the ALJ concluded that Lawson had post-laminectomy syndrome at step two, and that the ALJ considered this a severe impairment, I recognize that the ALJ did nothing to elaborate on this condition at step two. I agree with the Magistrate Judge's finding that the ALJ's step-four analysis goes on to recognize the conditions Lawson had leading up to surgery.[41] The ALJ

---

[36] See A.R. 13.

[37] See Doc. 16 at 2.

[38] A.R. 351.

[39] A.R. 426–27.

[40] A.R. 471.

[41] See Doc. 15 at 9.

writes that Lawson "has a history of low back pain with radiculopathy attributable to degenerative disc disease at L3-4 and L4-5 and a herniated disc at L3-4. After failing conservative treatment, he underwent a fusion and decompression at L3-4 and L4-5 in June 2004."[42] The ALJ then recognizes Lawson's post-laminectomy syndrome, which the ALJ reports was diagnosed following "continuous, severe, 10 on a scale of 10, aching, throbbing, shooting, unbearable back pain radiating to [Lawson's] right leg in April 2010."[43] That diagnosis followed in May and June 2010.[44]

I agree with Judge Hoffman's reliance on *Lewis v. Astrue*, in which the Ninth Circuit found that an ALJ's decision was supported by the requisite substantial evidence even though the ALJ failed to consider the claimant's bursitis at step two.[45] Because the ALJ "extensively discussed [the claimant's] bursitis at Step 4," where the ALJ considered any limitations caused by bursitis, the panel concluded that "any error the ALJ made in failing to include the bursitis at Step 2 was harmless."[46] The ALJ in this case directly recognized Lawson's post-laminectomy syndrome in step four when he described the "continuous, severe, 10 on a scale of 10, aching, throbbing, shooting, unbearable back pain radiating to [Lawson's] right leg in April 2010."[47] As in *Lewis*, "[t]he decision reflects that the ALJ considered any limitations posed by the [post-laminectomy syndrome] at Step 4."[48] "[A]ny error that the ALJ made in failing to include the [syndrome] at Step 2 was [therefore] harmless."[49]

When a Social Security claimant has a painful diagnosis, like Lawson's post-laminectomy syndrome, a benefits-denial can be a difficult decision to receive. But the ALJ considered this

---

[42] A.R. 15.

[43] *See* A.R. 15–16.

[44] A.R. 16.

[45] *Lewis*, 498 F.3d at 911.

[46] *Id.*

[47] *See* A.R. 15–16.

[48] *Lewis*, 498 F.3d at 911.

[49] *Id.*

8

syndrome and ultimately did not find, given all the evidence before him, that Lawson qualified for benefits under federal law. In his step-four analysis, the ALJ analyzed Lawson's ability to work and function from 2008 to 2010, when the ALJ issued his decision.[50] This detailed discussion of Lawson's medical history includes a specific focus on Lawson's physical abilities and limitations: standing, lifting, traveling, and more.[51] In addition, the ALJ questioned whether Lawson's "daily activities have been greater than he has reported," based on his work activity, his ability to move to travel to Alaska, his intermittent care, the lack of "clear evidence of neurological deficient," and the lack of "any opinions from treating physicians that the claimant is disabled or that he has limitations greater than those determined in this decision."[52] The standard of review here is substantial evidence: "more than a mere scintilla but less than a preponderance."[53] On this record, I must conclude that the ALJ provided substantially more than "a mere scintilla" of evidence that he considered Lawson's post-laminectomy syndrome, along with any other back-related pain, in making his administrative ruling.

I therefore overrule Lawson's post-laminectomy-syndrome objections.

**B.     Second Objection: Medical Evidence and Credibility Determinations**

Lawson goes on to object that "[t]he Magistrate Judge's recommendation relies heavily on a perceived lack of objective medical evidence in support of the claim for 'chronic pain syndrome.'"[54] In Lawson's view, reversal is necessary because both the ALJ and the Magistrate Judge "rejected" evidence of his failed-back syndrome "because it is based on 'plaintiff's self-report or the doctors['] knowledge of his history of medical treatment.'"[55] The Magistrate Judge does raise this concern

---

[50] A.R. 13–17.

[51] A.R. 13–17.

[52] A.R. 17.

[53] *Matney*, 981 F.2d at 1018; *Tackett*, 180 F.3d at 1098.

[54] *See* Doc. 16 at 5.

[55] *Id.*

about evidence credibility, but his recommendation goes on to expressly grant Lawson the benefit of the doubt on this issue and assume that Lawson does have post-laminectomy syndrome.[56] As explained above, the ALJ decision explicitly recognized and considered Lawson's post-laminectomy syndrome, even though the ALJ used different terms for the syndrome at different times.

I therefore overrule Lawson's second objection as well.

### Conclusion

Accordingly, and with good cause appearing,

It is hereby ORDERED that Wayne Lawson's motion for reversal **[Doc. 9]** and motion objecting to the Magistrate Judge's findings and recommendations **[Doc. 16] are DENIED**.

It is further ORDERED that the Commissioner's cross-motion to affirm **[Doc. 10] is GRANTED** to the extent it is consistent with this order.

It is further ORDERED that the Magistrate Judge's findings and recommendation **[Doc. 15] are ADOPTED** to the extent that they are consistent with this order.

The Clerk of Court is instructed to **CLOSE** this case.

DATED May 21, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[56] Doc. 15 at 8–9.

10